We'll call our final case, case number 25-4067, Ahmaud v. Noem. Counsel, go ahead. Yes, Your Honor. May it please the court, my name is Aaron Panthony, counsel for appellants Khalid Ahmaud and Maren Kergay. We would like to reserve three minutes of rebuttal time. This appeal involves the question of whether a federal agency, USCIS, can insulate from review the persecution determination under 8 U.S.C. section 1182e, or whether it falls under the bar of 8 U.S.C. section 1252a2b2 or section 2. The district court erred when it misapplied the Supreme Court's decision in Patel v. Garland, a section 1 case, to section 2, which is now firmly not the law under this court's decision in Mukantagara v. Noem of last week. We also note that the district court erred in not applying the reasoning and holding of the Supreme Court's Kukana v. Holder decision or to consider its persuasive authority in Wilkinson v. Garland. So what is left of this case after Mukantagara? Yes, Your Honor. So to apply the plain language of section 2 and to comply with Kukana v. Holder, and now this court's recent holding in Mukantagara v. Noem, this is a statute by statute issue. So today the issue is whether section 1182e, the first step persecution determination, is a nondiscretionary threshold eligibility step, which would be reviewable despite section 2. And so is it your view that we need to decide that question? That's the question here, whether that is in fact a nondiscretionary determination, that first step determination. Correct, Your Honor. And additionally, even though, and as we'll get to, the court did comment in Mukantagara on the word determined in that statute, but we'll have to compare and apply it to section 1182e. So if I understand your position, Mukantagara is our circuit's precedent about what we do with Patel in light of section 2. Yes, Your Honor. But now, going statute by statute, we still need to determine if the statute at issue has steps and if the threshold step is a nondiscretionary step. Correct? Correct, Your Honor. Is it your view that nondiscretionary means mandatory? In other words, an eligibility determination has to be made, therefore it is nondiscretionary. Yes, Your Honor, that is the position we take. And what support is there for that position? Did Mukantagara say that? Mukantagara did say that, Your Honor. It said that a predicate threshold eligibility decision is categorically nondiscretionary and therefore a district court would be able to review it. And in that case, they then analyze the statute at issue 1157C4 to determine whether it was a threshold eligibility determination. But what I'm struggling with is 1157C4, the statute that was at issue there, has this sort of binary quality to it. You either satisfy the definition or you don't, and it's by reference to statutory criteria. Here, we have none of that. We have a persecution determination that in the text of the statute is totally unconnected to any determination. We have the manual. We have the USCIS policy manual. But in the text of the statute itself, it seems more discretionary in terms of what it requires than the statute at issue in Mukantagara. And I guess I want to get your reaction to something. None of what I said just matters at all. If Mukantagara is correctly read to say any predicate eligibility determination that is mandatory is inherently nondiscretionary. I see where you're coming from, Your Honor. And let me take a step back. That is what I believe that Mukantagara does say. However, as we argued in briefing, Kukana v. Holder in the plain reading of Section 2 requires that every statute must be analyzed for specified discretion. And we argue that we should apply Wilkinson v. Garland to analyze each specific step of a statute, whether that be two or whether that be three or more. In our case, we have a fairly unique statute in that Section 1182E creates this three-step process, injecting a second agency in the process as well. So that is definitely why we benefit or the court would benefit from oral argument today. So we would say that we still have to look at the specified discretionary language within the statute itself. So tell us your three-step process here. But even if it's discretionary, we have to determine whether, as Judge Rossman is saying, that there's a standard we can measure. I mean, even if it's mandatory. I'm sorry. There's a standard that we can measure the decision again for purposes of review. And now, I'm sorry, you can tell us our three-step process. Yes, Your Honor. And to answer Judge Carson's question, the three-step process, as dictated by the statute itself, is first this mandatory determination after he has determined referring to the Secretary of Homeland Security in our instance. And once it makes that determination, it then must pass the waiver application over to the State Department for its recommendation. And under regulation, the State Department is required to review program policy and foreign relations aspects of the case. Once that has been completed and if the State Department has made a favorable recommendation, it will then be passed back to USCIS where it must make a finding of whether it is in the U.S. public interest to grant a waiver. And once it does that, then and only then can it exercise its ultimate discretionary authority to grant or to deny the waiver. So the way this works, if this was passed on, I mean, there's been a step one determination, right? Yes, Your Honor. Because this had to go up to this, I'll call it an appellate body, for them to make a decision. And if they recommend against your client, then there's no discretion. He loses, right? Your Honor, that is not. So to answer your question, yes. Under the statute, if there is a not favorable recommendation, then the authority is stripped from USCIS ultimately to grant the application. That is not the procedural posture that our case is in. Our case is from a non-finding of persecution. So then the application was denied on those grounds. So today we are here to discuss whether that decision itself is reviewable by the district court. So hold on a second. Yes, Your Honor. I'm just thinking this through. So you have an administrative remedy that has not been taken advantage of yet. So if you're asking about exhaustion of administrative remedy. You could have asked for the next step review. Your Honor, so that was an optional appeal. And under Garvey v. Cisneros, the Supreme Court case, it either requires that the statute itself mandates an appeal, or if there's a regulation on point, that regulation has to stay the decision while it is an appeal. And that is not the case with the regulations at bar here. It is an optional appeal, as noted in the denial decision itself by the agency. And we do not, therefore, have to exhaust that.  Fair enough. I guess what I'm getting at is we're not going to hear at some later date that there still can't be anything done because you get to appeal to the next level. That is an interesting point, Your Honor. That is something that maybe procedurally could be taken advantage of. Like, let's say that this does go back down to the district court on remand. It then also decides that it's going to remand the decision to the agency for further reconsideration. And if at that time it then decides that it is going to still issue a denial, and then we would be able to potentially take advantage of the optional administrative appeal at that point, or we could, you know, potentially exhaust other options. Okay, so your position is it's optional to you but mandatory to the government. If you want to take it up to the next level, they have to hear it, but you don't have to take it up, and you can go back to the district court if you wanted to. I would disagree with that statement, Your Honor. They don't necessarily have to take it up. It's not a mandatory acceptance of the appeal. They have the discretionary authority. The Administrative Appeals Office under USJS can decide not to hear the appeal. Okay, fair enough. Go ahead. Okay, so the analysis was absent in the district court. The district court did not look with fine detail at Section 1128 itself, which is why we are discussing it here today. And I would like to reiterate that under Kucana v. Holder, there must be a clear and convincing evidence standard that Congress applied discretion at this step. And as we've discussed already, there is a textual dichotomy here in that there is a phraseology that we'll talk about. This has determined that has a mandatory connotation. And then at Step 3, the discretionary grant, the phrase may waive. And then the placement of the State Department at the second step really also kind of further limits this ultimate discretionary grant, as Judge Carson was pointing out. So can you back up to the – at issue before us is the first step, eligibility determination, right? Yes, Your Honor. Mukantagara has cleared the way where we don't have to interrogate the Patel Section 2 question. Agreed? Yes, Your Honor. Okay. So does the fact that in your case the first step is mandatory, meaning you can't go to Step 2 and 3 unless you have an eligibility determination, in that sense it is mandatory, does that mean it is nondiscretionary for purposes of judicial review? That is one of the pieces that we would argue, yes. The fact that it is a mandatory determination is one piece that points towards it being nondiscretionary. Okay. So mandatory, you're saying, is coextensive with nondiscretionary, or are you saying mandatory is one data point in determining whether the first step eligibility determination is nondiscretionary? Yes, Your Honor. So it is one data point. It is not the end-all and be-all question, at least the way that we are positioned. You'd also have to look for the language of the statute itself. Okay. So this is very helpful. So if you can walk me through why the first step of your statute, contra the first step of perhaps McOntegara's statute, why is the first step of this statute nondiscretionary when the persecution determination that it compels to be made at the first step is not guided by any criteria at all? So, Your Honor, just to clarify, you're asking why is there no statutory criteria for what is persecution in the statute? The statute for the eligibility determination at the first step requires a finding of persecution on account of, right? Yes, Your Honor. And my question is that determination, there's no reference to any statutory criteria for determining when an applicant demonstrates persecution. And how can we say that in the absence of that statutory criteria, you have anything but a discretionary determination as opposed to a nondiscretionary determination? I see where you're going with that, Your Honor. I'm so sorry. Can you rephrase it briefly? My concern is that if you agree that just because it's a mandatory first step, that doesn't mean it's nondiscretionary. That might be one data point along the way. We really have to look at what the heck is going on at the first step. And here at the first step, the mandatory eligibility determination, DHS is deciding whether your client would be subject to persecution. That determination is not guided by reference to any statutory criteria. When I see that, I'm thinking that's a pretty discretionary determination. Your Honor, let me compare this to the statute issue in Mukantagara, so 1157C4, right? There is a cross citation in that statute. It says go look at AUSC1101A42 for the definition of refugee. If you look at that statute, that also has a requirement that the agency should review whether the person would face persecution in their home country. And there is no further cross citation to that. It's because persecution is defined mainly by administrative and federal case law. So it's going to be a case-by-case analysis. But it's still a legal determination in a way. There are facts and there's also the law. So if you're asking whether a district court would be able to evaluate what is persecution in this J-1 waiver context, that is something that the district court is well equipped to do. And it would be able to review the agency's action to determine whether it was arbitrary and capricious. By reference to what standard? Your Honor, this would be, again, up to the district court to decide what the standard is. We argue that it is the well-founded fear standard because this was originally adopted in the 1970 amendment, and then later there was the 1980 amendment that brought asylum law into U.S. immigration, the INA. And we argue that that is then adapted. This waiver, this persecution waiver as well, is it encapsulated the well-founded fear standard. That's something we would argue before the district court. It's not necessary to decide in this appeal today. It's purely based on whether Section 2 strips jurisdiction or not. And I see that my time is elapsing. And could I briefly conclude and reserve some time for rebuttals? Go ahead, and we'll let you know on the rebuttals. Go ahead and finish that. Okay. Thank you, Your Honor. So to briefly conclude, the court failed to apply the Kukan on the green standard. Mukantegara now applies, which provides a clear jurisdictional pathway, potentially, for Mr. Ahmad to seek review of his waiver application. The threshold eligibility requirement of determination is a nondiscretionary act, as we defined with various dictionary definitions. And we can compare it to Mukantegara, as we did in our 28-J letter. And then, as well, this injury is redressable, as the remedy of APA vacate or remand from the district court would provide an opportunity to resolve the discreet injury of this non-finding of persecution at the agency. And we request that this court vacate and remand to the district court for further reconsideration. Okay, just so I'm clear, the ultimate remand you're asking for is send it back, make them make a determination. Ultimately, yes, with the intervening step of the district court having to agree on the arbitrary and capricious standard. Got it. Fair enough. Thank you, Your Honor.  Go ahead. Good afternoon, Your Honors. David Byerly on behalf of the government. It's a pleasure to be in this court today. It's my first time, and I'm wishing Judge McHugh a speedy recovery. So I think Judge Rossman correctly identified what the issue is here, which is whether there is anything left for the court to do after Mukantegara. So we're looking at whether Mukantegara necessarily dictates the outcome of this appeal, whether the district court can still be affirmed, even if the reasoning that was issued in the district court probably would be difficult to reconcile with what Mukantegara said. And I think the discussion that Your Honor was having with the opposing counsel is a really good one, and it's the point that the government was going to raise today, which is that we don't read Mukantegara to blow the doors off of what 1252A2B2 is supposed to do. So what Mukantegara was looking at in the context of that case is whether a revocation because the plaintiffs did not meet the definition of a refugee was reviewable for that first part of it, whether they met the definition of a refugee. And Mukantegara, if I understand that record correctly, was looking at whether Mukantegara was disqualified under the prosecutor bar for refugee status. And that's more or less consistent with what Mejia, which the Mukantegara court found persuasive. It's a backward-looking determination at a course of conduct when instead the decision about whether somebody would be subject to persecution or whether somebody cannot return to the country because they would be subject to persecution. I think that's analogous to a lot of what this court has said in the withholding of removal context under 1229B and 1252A2B1, which generally the trend that the court's cases have followed is that whenever there's sort of a predictive reasoning, whenever there's a predictive guess at whether somebody would be subject to persecution or whether somebody's removal would cause exceptional hardship on somebody who is removed, that's the kind of decision the court has still found discretionary, even if it's not phrased in purely and explicitly discretionary language. And I think that comports with what this court has held in Hamilton, Van Den, and Green. So, yes, the government's position is that even if the first step decision here is phrased in non-discretionary terms, it still provides the agency discretion to evaluate the evidence and exercise this discretionary guesswork for whether— So mandatory doesn't mean non-discretionary in the government's view? So not in terms of the way Mukandegara was decided. So I think what Mukandegara requires is that the first step be mandatory one and also non-discretionary at the same time. So I think there might be a little bit of confusion in the way that Mukandegara is parsed because it uses the word non-discretionary to refer to both a non-discretionary determination that happens at a mandatory step one and then also the step one happening at all being non-discretionary. Because it would be—is it the government's—well, I'll tell you what I think and you tell me your reaction. I mean, it seems that it would be the most consistent reading of subsection 2, the most consistent textual reading of subsection 2, which requires us to look at the action or decision to interrogate that, right? So, in other words, if Mukandegara says if it's an eligibility determination that's mandatory, that doesn't complete—that's not a complete sentence. We have to continue to look at what actually is happening. What is the decision-maker doing in making that initial determination that is mandatory, the eligibility determination? And if discretion inheres in that in the way that you're describing, that that still could potentially be non-reviewable. Is that the government's position? So, the government's position is that we agree with the ultimate point, that if there's some part of the first step, the mandatory first step, if that is still discretionary, at least in some part, that Mukandegara doesn't require that decision to be reviewable. I think the government's primary position would be that Zia and Fofana and Chaiban were correctly decided, but I understand that this court is bound by Mukandegara. So, we agree, I think, with the ultimate conclusion that if the first step is taking Mukandegara as it is and assuming that there's no further review of Mukandegara, that we don't think that Mukandegara necessarily opens the door to courts sort of salami slicing each sort of level of decision-making. And then, too, if the first step is mandatory but still discretionary, I don't think Mukandegara still opens the door to review of that decision, because 1252A2B2 forbids review. It doesn't sort of – it doesn't narrow the remedy to only not setting aside discretionary outcomes, if the court tracks sort of my reasoning here. Well, and I'm trying to understand what you're saying. Are you saying that because here I know that Judge Rossman focused on that in Mukandegara there was a statutory definition of refugee, whereas here we're relying on law of persecution that's developed by the Supreme Court and thousands of cases? Are you saying that has to be a statutory law for it not to have a mandatory requirement that's somehow discretionary? Well, I think if we take Mukandegara as it's written, there is a statutory definition in place for – in the circumstances that Mukandegara was decided under. I don't know if Mukandegara can necessarily be extended to a circumstance where there is no such equivalent. Mukandegara doesn't speak to that. In Mukandegara, you look at the definition of a refugee and it incorporates persecution. And so in the refugee statute, you'd still be looking at the case law of what is persecution. So I guess the question, if we look at Bofora and the Supreme Court's talking about where there's no – it's in your discretion or what you deem to be good cause, all of that. Clearly, there's no defined legal standard to apply the facts to, right? But here we do have thousands of cases that set up a legal standard for persecution, which I think it's the well-founded fear standard. Why isn't that enough to say that we could review this? They have to make a decision at the first step, and we've got a legal standard. Isn't this what we do all the time when we review a decision applying the facts to the law? So, Your Honor, I think that there's a couple points there that I would like to respond to. One, the asylum standard is not the same standard as somebody who would be subject to persecution under 1182e. So when we're looking at asylum, what the standard is for asylum is that somebody is unwilling to return because of a well-founded fear of persecution, whereas the statute here says that the person cannot return because they would be subject to persecution on account of race, religion, or political position. So the standards here are not congruent. What this statute requires is not to assess whether somebody has a credible fear at the present time. It requires U.S. states to gauge a predictive guesswork as to whether somebody cannot return, meaning no internal relocation, etc., etc., and that they would be subject to persecution on the grounds of race, religion, or nationality. It's not assessing somebody's credible fear at this point in time, so the standards are different. It's a different standard, I agree, but it's still something we do all the time, which is we determine whether there was an application of the facts to the law that was correct, right? So, I mean, I don't get that there's no standard here to review what is a mandatory decision at the first step. So the government doesn't agree that even though it's phrased in sort of language that could seem non-discretionary, that it still excludes the possibility that there's still discretion involved in the decision. And I'll point to a couple of cases that this court has decided, which is Perales-Cumpean, that looks at whether somebody's level of cruelty extended from regular cruelty to extreme cruelty. There's also Morales-Ventura v. Ashcroft from the 10th Circuit in 2003, whether somebody's removal would result in exceptional and extremely unusual hardship to the alien's U.S. citizen or LPR spouse, citizen, or parent. Those are, even though that they're not phrased in terms of, hey, this is in the government's discretion, it still requires some predictive guesswork on the part of USCIS that looks at the evidence as submitted, and then the USCIS exercises some level of discretion in determining whether the evidence is sufficient to demonstrate that the hardship that it would cause on the citizen spouse, child, or parent left behind would be exceptional and extremely hard. Sorry, I'm butchering the exact phraseology, but it's exceptional hardship, essentially. Hardships that the line drawing between what is a hardship and what is an exceptional hardship still involves some line drawing by the agency. And so we would say that that mucantiguar doesn't allow for review for first step, even though the first step may be mandatory decisions that are made within the context of that mandatory first step that still involves some level of discretion. I think that's the way that reading mucantiguar consistent with the court's prior precedence in Green, Hamilton, and Van Den, how that is properly read. We don't read mucantiguar, at least at this point, to blow the doors off of 1252A2B2 and allow for review whenever somebody claims that, hey, I don't like the outcome. This must mean necessarily that there was some error in procedure, some error in legal applicability, or some abuse of discretion in evaluating and applying the evidence to the legal standard. So what if we give it to you that it's discretionary, that the determination of whether he would be subject to persecution in the future, if he was required to stay for two years in his home country, was discretionary and not reviewable? Is a non-finding where there's no finding at all, I mean, does that make any difference? Can the government just decide not to decide it and deny it? So if somebody is denied, in the end, an 1182E waiver, that could be for any number of reasons. I'm specifically thinking of four. One, that there was no finding of persecution. Two, that there was a finding of persecution, but the State Department ultimately decided not to end up recommending it favorably. Or three, ultimately, at the end of the day, USCIS decides to deny it as a matter of discretion. So those are really the main three possibilities. But the second two aren't before us. We're not looking at that. We're just looking at step one, right? I mean, he could be entitled to review of the decision on step one and still lose under step two or three. So first, I'll point out that, again, the step one determination here does involve some level of discretion. Because if we look at this court's cases, whenever it involves sort of predictive guesswork, that still entails some level of discretion on behalf of the agency. Two, I would say that the decision, I would point out that the decision in this case says that the USCIS also decided not to recommend favorably this case. And that they also found that persecution had not been established. Well, they never went to step two, did they? They never went to step two here. There was a decision that there was no risk of persecution, right? So we never got a step two or three here. And also USCIS would not recommend favorably the application. We don't know what they would do. Well, Your Honor, respectfully, I'll point to page 10 of Appendix Volume 2 in that second to last paragraph where it says that USCIS, that the, I do have the exact language here, so I'll just go ahead and quote it. At Appendix Volume 2 at page 10, you have not met your burden in demonstrating that a favorable recommendation of this application by USCIS on the basis of exceptional hardship or for persecution should be forwarded to the U.S. Department of State. So I do think that there's still some level of discretion in there, in that first step, sort of eligibility determination, if we want to call it an eligibility determination, there's still some discretion in there. Well, no, they just said step one, you didn't show the persecution prong, and so as a result, we're not passing it on. I don't, I mean, it never got to step two. So I think it's, I think it's correct to say that this case, I don't think there's any dispute that the application was not forwarded to the U.S. Department of State for a recommendation up or down either way on their side. But USCIS did exercise some discretion here in deciding not to recommend it favorably. Well, because they made a determination that he, they determined that the alien can return without fear of prosecution, right, without being persecuted, and thus, you don't pass it on. So I think that's... You have to have a favorable decision at step one to even get it to step two, right? Yes, I think that's correct, Your Honor. But I'll also point out that this is a good kind of segue into why the new kindergarten needs to be read consistently with Hamilton and Green, because in those cases, what you had underlying the good and sufficient cause for a visa replication was not necessarily purely discretionary either. Those turned on legal questions, and the courts decided that it couldn't review good and sufficient cause, even if that good and sufficient cause was based on a legal determination. So I think I'm going to run out of time here. Actually, I have one more question.  Can you say a little bit more about this predictive guesswork standard that you were describing? Where I'm really struggling is it seems all agree that just because eligibility determination is mandatory, that alone doesn't mean that it is non-discretionary, at least today. That is sort of my take on the common understanding. So then we have to determine whether that eligibility determination is non-discretionary or requires the exercise of discretion. In Mukante-Gara, we had some statutory criteria guiding the exercise of discretion, which ultimately then incorporated, as Judge McHugh explained, the persecution standard that is also relevant here. So if there's statutory criteria guiding the determination, maybe that's over here as more non-discretionary. If there's no statutory criteria guiding, I don't know, maybe it's over here. But you're saying if predictive guesswork is required, that means that it's more discretionary than non-discretionary. I think that's a pattern of the court's cases that has been followed generally. So if you look at Morales-Ventura and if you look at Perales, both of those looked at whether somebody's – well, Perales was backward-looking. But if you look at Morales-Ventura, whether somebody's removal would cause extreme and exceptional hardship to somebody left behind, that is a predictive guesswork sort of thing that the court has found discretionary. And when the court has found sort of not clearly discretionary language, non-discretionary is when it's looking backwards. So if we're looking at whether an alien had not established continuous residence, whether they were outside the country for 90 days, those are sort of the algorithmic decisions that this court granted in the – it's usually in the withholding of removal under 1229B. And you're looking at the 1252A to B1 rather than B2. I think those still provide a good framework from which this court can work and sort of resolve this case. If the agency has to exercise some sort of judgment or discretion in terms of deciding whether something will be true in the future, I think that still entails some level of discretion. Whereas if it's backwards-looking for Mejia versus – or Mejia-Rodriguez in the 11th Circuit, that was whether somebody had committed a felony or two misdemeanors. For Hosseini, cited by the McCandicott Court, that was whether somebody had provided material support to a terrorist organization. And then for the other decisions that I mentioned earlier, Baldivia, 10th Circuit 2005, whether somebody's absence from the United States exceeded 90 days such that it disrupted continuous residence. And then the other sort of exception in addition to extreme cruelty is whether somebody's departure that disrupted continuous residence was voluntary. That was also a decision found to be discretionary because it involves just too much, hey, it could be this, it could be that, depending on the circumstances of the case. And granted, I don't think it was important to that court that voluntariness is decided in a whole bunch of other legal contexts. And courts review voluntariness all the time, whether it's contracts or sexual assault claims or whatever it may be. Voluntariness really depends on the circumstances and involves some sort of evidence weighing and discretion on behalf of the agency. So I think generally when it involves predictive guesswork and looking at what's been submitted, will this person – can this person not return to their country? Not just an unwillingness, can they not return to their country because they would be subject to persecution at the end of their term? I do think that involves guesswork about what things are going to be like in Jordan however many months from now or however many years from now. And I think it also looks at whether they would be subject to persecution as opposed to it being possible or whether there's just a fear of it. So I do think that this sort of decision where it involves more – could go either way is more discretionary than whether somebody did something that disqualified them from the definition of a refugee. I think that's backward-looking. That's not clearly discretionary. Thank you, counsel. Your time is up. Let's give about three minutes to rebuttal here. Thank you. Thank you, your honors. So the task at hand is to look for whether there is clear and convincing evidence of discretionary language in the statute. As this court remarked in Mukantagara, the word determined does not by itself reveal discretion. So we have to look a little bit further. So if we look at the dictionary definitions that we defined in our briefing, those amount to an investigation to discover the truth of the matter, whether Mr. Ahmad be subject to persecution. And we can compare the statute issue in Mukantagara to the statute issue here. These are both structured as conditions precedent. So if we read in relevant part, section 1157C4, refugee status may be terminated if the attorney general determines that the alien was not in fact a refugee. And if we look at section 1182 in relevant part, upon the favorable recommendation of DOS pursuant to the request of USCIS after it has determined that the alien would be subject to persecution, USCIS may waive. So we have a clear distinction between what is it that they must do and not necessarily they must do, but that they have a non-discretionary duty to do. And then they are able to exercise authority after that by the words of the statute as required by Kukana and the plain meaning of section two. Additionally, the government has intimated, Mike Farncross et al. has intimated that there is no requirement for the USCIS to pass even a recommendation or even a case where they have found persecution over the State Department. That is not just, that is not true. There is no requirement under DHS regulations under 212.7. But under State Department regulations, there is a mandatory duty as we've cited in our briefs in 42 CFR 41.63. And it says that USCIS shall pass for the recommendation. And it says that the State Department shall evaluate program policy and foreign relations aspects of the case. So there is no clear discretion that has been granted to USCIS at this first step, not in their policy manual, not in regulation, and not in the statute itself. And if they argue that USCIS is not bound by the State Department's regulations, because this unique statute involves two different agencies, this is a whole of government approach. Because one agency understands the same statute to make a mandatory duty and that is non-discretionary and to pass it over for a recommendation, that is what counts. So there is regulation that requires that action to be done. And at this time I'll briefly conclude again, we ask that this court vacate and remand the district court's decision, and that the district court consider whether the USCIS made an arbitrary and capricious decision under the APA and whether to remand for reconsideration. Thank you. Thank you, counsel. The case will be submitted and counsel are excused.